IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED
MAR 17 2021
PATRICK KEANEY
Clerk, U.S. District Court
By_____
Deputy Clerk

| | |
|---|---|
| FRANCISCA N. MARTINEZ, individually and in her official capacity as Personal Representative of the Estate of JOSIAH C. SAWNEY, deceased; Angelo Sawney; Frankie Sawney; Logan Sawney, <br><br> Plaintiffs, <br><br> v. <br><br> SEQUOYAH COUNTY CRIMINAL JUSTICE AUTHORITY; SEQUOYAH COUNTY JAIL; BOARD of COUNTY COMMISSIONERS of SEQUOYAH COUNTY, OKLAHOMA; LARRY LANE, SEQUOYAH COUNTY SHERIFF, individually and in his official capacity; SEQUOYAH COUNTY SHERIFF'S DEPARTMENT; JULIE NINAL or JANE DOE, individually; JASON STONE, individually and in his official capacity; Defendants JOHN and JANE DOES I through X of the Sequoyah County Sheriff's Department, individually and in their official capacities; TURN KEY HEALTH CLINICS, LLC, an Oklahoma Company; <br><br> Defendants | Case No. CIV-2021-084-RAW |

## COMPLAINT

COMES NOW, the Plaintiffs, Francisca N. Martinez, individually and in her official capacity as the Personal Representative of the Estate of Josiah C. Sawney, deceased, on behalf of Josiah C. Sawney and all the beneficiaries of his estate, and the children of Josiah C. Sawney: Angelo Sawney, Frankie Sawney and Logan Sawney, and for their causes of action against these Defendants, allege and state as follows:

## PARTIES

1. Plaintiffs Francisca Martinez is the Personal Representative of the Estate of Josiah C. Sawney, deceased, case number PB-2020-26, District Court of Adair County, Oklahoma. *See* Exhibit "A," *Order Appointing Personal Representative*. Francisca Martinez resides in the State of Arkansas and this case concerns the death of her husband, Josiah C. Sawney, who was killed on March 21, 2019 while in the custody of the Sequoyah County Sheriff's Department and the Sequoyah County Jail. Angelo Sawney, Frankie Sawney and Logan Sawney are the children of Josiah Sawney.

2. Separate Defendants Board of County Commissioners of Sequoyah County, Oklahoma, the Sequoyah County Jail, and the Sequoyah County Criminal Justice Authority are subdivisions of the State of Oklahoma operating the Sequoyah County Jail ("SCJ" or "jail"), and are responsible for the jailing, safe-keeping and supervision of Sequoyah County detainees awaiting trial and for allocating sufficient money to safely operate the jail. SCJ has the statutory and constitutional responsibility of ensuring the safety and well-being of all detainees in its care and custody. Josiah C. Sawney was a pre-transfer detainee in the jail when he was killed at the hands of SCJ staff, employees, and/or third-party contractors.

3. Separate Defendant Larry Lane, Sequoyah County Sheriff, was at all relevant times alleged herein, the duly elected and/or appointed Sheriff of Sequoyah County, Oklahoma. In that capacity, and pursuant to Oklahoma statutes, he was responsible for the operation of the SCJ, including establishing and enforcing, or failing to establish and enforce, the policies, practices, procedures and regulations for the sheriff's department at the SCJ. Defendant Lane was, at all relevant times, responsible for the hiring, training, supervision, discipline and control of all members of the sheriff's department and the SCJ.

4. Defendant Larry Lane, Sequoyah County Sheriff, had the constitutional and statutory responsibility for the conditions and practices of the SCJ; he was therefore responsible for ensuring the SCJ conformed to the state and federal constitutions. Defendant Larry Lane, Sequoyah County Sheriff, as the custodian and policy-maker of the SCJ, was also responsible for the internal patterns and action, or inaction, by all employees of the sheriff's department resulting in the creation, or tacit approval, of "ad hoc" policies that violated constitutional rights of pre-trial detainees like Josiah C. Sawney who were housed in the SCJ. Defendant Larry Lane is further responsible for, and charged with, furnishing and paying for all medical aid for all SCJ detainees. He is also responsible for the action, or inaction, resulting in the policy or "ad hoc" policy of failing to reasonably protect SCJ inmates and detainees from excessive force or neglect by staff members, employees, and/or third-party contractors. In sum, Defendant Lane was constitutionally and statutorily responsible for the operation, practices and totality of conditions of the Sequoyah County Jail. Defendant Lane acted as the chief policy-maker, agent, servant and employee of Sequoyah County, Oklahoma at all relevant times alleged. Defendant Lane is sued in his individual and official capacity because he did not properly carry out his responsibilities.

5. Separate Defendant Sequoyah County Sheriff's Department ("Sheriff's Department") is responsible for staffing, monitoring and operating the SCJ. The Sheriff's Department has the statutory and constitutional responsibility of implementing and following policies, procedures, and guidelines for the jailing and safe-keeping of SCJ detainees. The policies, procedures, and guidelines must conform to Oklahoma law, minimum jail standards and the laws and constitution of the United States and Oklahoma. Furthermore, the policies, procedures, and guidelines must be clear and

       effective to ensure the safe-keeping of all SCJ detainees. Larry Lane assumed the duties of the sheriff of Sequoyah County, Oklahoma on January 1, 2017, and is sued in his official capacity as the Sheriff of Sequoyah County, Oklahoma.

6. Separate Defendant Julie Ninal, or Jane Doe, was at relevant times the nurse on duty at the SCJ, apparently employed by independent contractor, Turn Key Health Clinics, LLC.

7. Separate Defendants John and Jane Does I through X of the Sequoyah County Sheriff's Department are either individuals involved in the excessive force and/or neglect used against Josiah C. Sawney and/or are supervising officers of the employees at the SCJ at all relevant times herein. John and Jane Doe Defendants are responsible for implementing and following procedures and guidelines for the arrest, jailing, medical care and safe-keeping of SCJ detainees. These employees are responsible for post assignments, supervision of Josiah C. Sawney and/or appropriately interacting with Josiah C. Sawney in accordance with constitutional standards and Oklahoma laws. These Defendants are being sued in their individual and official capacities.

8. Separate Defendant Turn Key Health Clinics, LLC ("Turn Key"), whose principal place of business is the State of Oklahoma, was contracted by the Sequoyah County Board of Commissioners, the Sequoyah County Jail, the Sequoyah County Criminal Justice Authority, and/or the Sequoyah County Sheriff's Department to provide medical care to its inmates. As such, Turn Key is liable for the acts of negligence and/or deliberate indifference of its employees during its care of Josiah C. Sawney under *respondeat superior* and upon those acts that are related to the policies, procedures and protocols implemented by the entity.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and other applicable statutory common law theories of recovery. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 1331 and 1343, because the action presents federal questions and involves a deprivation of civil rights arising under the federal constitution. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

10. Venue is proper in this Court under 28 U.S.C. §1392(B), because the acts complained of occurred in Sequoyah County, Oklahoma, which is located in the Eastern District of Oklahoma.

## FACTS

11. On March 20, 2019, at approximately 7:30 p.m., Josiah C. Sawney was brought to the SCJ at the request of the Rogers County, Arkansas, Police Department for an outstanding warrant after a traffic stop in Sequoyah County. The incident report and eyewitness report conflict. The incident report states that the car crossed the center-line but the eyewitness states Mr. Sawney was told he was stopped apparently for a Native American beaded necklace hanging from his rearview mirror and the alleged violation of an obstructed view. Mr. Sawney was required to sit in the front seat of the arresting officer's car while the officer went back to talk to Mr. Sawney's companion, who had stayed in the vehicle Mr. Sawney had been driving. Mr. Sawney was then put in the backseat of the officer's car after Rogers County had affirmed they wanted him transferred to Arkansas. Mr. Sawney's companion, by virtue of the front seat, was then given a ride to a nearby convenience store. The passenger had no valid

driver's license and the car Mr. Sawney had been driving was apparently being impounded. Mr. Sawney was then held in the SCJ prior to his proposed transfer to Rogers County and was considered a pre-trial detainee within the care and custody of the SCJ once he was asked to step into the Sequoyah County Sheriff Deputy's vehicle.

12. According to the medical examiner's report, Mr. Sawney was placed in an individual holding cell after he was apparently asked if he had previous suicidal thoughts and he "said he currently was thinking of suicide." Early the morning of March 21, 2019, Mr. Sawney began displaying "altered mental status and was becoming agitated." He was then moved to a restraint chair where he apparently then "appeared to be asleep." It was only then that someone called 911.

13. It was reported to the Medical Examiner that that Mr. Sawney had a history of drug abuse. However, there were statements made to the media by the nurse on duty, Ms. Julie Ninal, or Jane Doe, that Mr. Sawney had told her he had consumed an energy drink. According to reports, Mr. Sawney refused to take a drug test, even though, as a detainee, he did not have the right to refuse.

14. Despite being in obvious physical distress, Mr. Sawney was left in the restraint chair.

15. Sheriff Lane contacted the Medical Examiner's Office at 10:27 a.m. on March 21, 2019 to notify them of the death. Mr. Sawney died twenty-one minutes after the phone call from Sheriff Lane, at 10:48 a.m. on March 21, 2019, at the hospital in Sallisaw, Northeastern Health Systems.

16. According to the medical examiner's report, a plastic baggie with a Ziploc-type seal was found in the contents of Mr. Sawney's stomach. His nose and mouth were filled with blood and the hospital was unable to even collect his urine, as it was

predominantly blood. Mr. Sawney was covered in bruises, some, but not all, indicative of restraint, puncture wounds to his left foot and his official cause of death was methamphetamine toxicity.

17. Plaintiffs believes that the SCJ staff informed Ms. Ninal, or Jane Doe, of Turn Key, of Mrs. Sawney's obvious medical distress. Then the SCJ staff and Ms. Ninal or Jane Doe, failed to provide Mr. Sawney any medical care and/or attention despite his serious medical needs and/or failed to call emergency services to attend to his serious medical needs.

18. It is believed that the SCJ employees and/or the Turn Key employee observed Mr. Sawney in this serious medical need and exhibited a deliberate indifference in failing to respond in accordance with the constitutional requirements of the United States.

19. Mr. Sawney ultimately died as a result of the deliberate indifference to his medical distress.

## COUNT I – VIOLATIONS OF 42 U.S.C. SEC. 1983

20. Plaintiffs realleges and incorporates every allegation set forth in paragraphs 1 through 19 as if fully set forth herein.

21. The Defendants, individually and in concert, had knowledge of, and/or were deliberately indifferent to the following:

    A. The ongoing pattern and practice of constitutional violations at the SCJ and the Sheriff's office;

    B. The ongoing failure to implement adequate policies, guidelines and procedures to reasonable ensure the safety of detainees and the prevention of the use of excessive force on detainees like Josiah C. Sawney;

C. Failure to follow the written SCJ policies, guidelines and procedures when Josiah C. Sawney was a detainee;

D. Failure to properly staff the SCJ;

E. Failure to properly assign duties of the deputies in charge of the care, custody and control of detainees;

F. Failure to property monitor the supervisors of the SCJ;

G. Failure to correct known deficiencies in the SCJ's operation, policies and procedures.

22. All the Defendants' acts and omissions created a known and substantial risk of serious and deadly harm to Josiah C. Sawney and others like him. Under all circumstances, the Defendants' pattern of action and inaction toward Josiah C. Sawney, their lack of properly trained staff, and their failure to supervise, constitute a deliberate indifference to the known substantial risk of serious harm and death to Josiah C. Sawney.

23. These acts and omissions violated his constitutionally protected rights and proximately caused all of his injuries and death. All of the Defendants' acts and omissions constitute a deliberate indifference to Josiah C. Sawney's care, custody, and safe-keeping. These acts and omissions proximately caused Josiah C. Sawney's death and violated his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, which are actionable under 42 U.S.C. Sec. 1983.

## COUNT II - EXCESSIVE FORCE

24. Plaintiffs hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 23 of this Complaint.

25. While detained in Defendants' custody, Josiah C. Sawney had a constitutional right under the Fourth Amendment to be free from the use of excessive force. The

Defendants violated Mr. Sawney's right under the Fourth Amendment to be free from excessive force by their above described actions consisting of their intentional acts to injure and cause extreme pain and suffering to Mr. Sawney.

26. His constitutional right was clearly established at the time of Mr. Sawney's detention.

27. As a direct and proximate result of Defendants' acts and/or omissions, as described herein, the Defendants, some while acting under color of state law, deprived Mr. Sawney of his constitutional right in violation of the Fourth Amendment and 42 U.S.C. Sec. 1983.

28. As a direct and proximate result of Defendants acts and/or omissions, Mr. Sawney suffered injuries and ultimately lost his life in violation of the rights, privileges and immunities under the Constitution of the United States, resulting in damage in an amount of excess of Seventy-Five Thousand Dollars ($75,000.00).

29. The Defendants, and each of them, have in regard to this matter exhibited a willful and deliberate disregard for the rights and safety of Mr. Sawney. Accordingly, Plaintiffs is entitled to punitive damages against all of the individual and supervisory Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT III - DENIAL OF DUE PROCESS
## RIGHT TO ADEQUATE MEDICAL CARE

30. Plaintiffs hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 29 of this Complaint.

31. While detained in Defendants' custody, Mr. Sawney had a constitutional right under the substantive due process clause of the Eighth Amendment to the Constitution of the United States to have his basic needs met, including the right to receive adequate medical care. Deliberate indifference to an inmate's serious medical needs constitutes

a violation of Mrs. Sawney's due process rights, which are further secured by the Fourteenth Amendment. Mr. Sawney's obvious physical distress and his verbal complaints clearly established there was a medical problem that required immediate appropriate medical attention during his detention. If any of the Defendants had acted appropriately and with the proper care toward Mr. Sawney, there would have been plenty of time to save his life.

32. During all times herein, the individual Defendants acted under the color and the pretense of law.

33. The Defendants herein deprived the Plaintiffs of the rights, privileges and immunity secured to them under the United States Constitution and the laws of the United States.

34. The Defendants' behavior far surpassed mere negligence as they willfully denied Mr. Sawney adequate medical care and were deliberately indifferent to his serious medical need.

35. Mr. Sawney had objective and serious medical needs and it was obvious that he required immediate medical attention after his verbal expressions and clear physical distress. Furthermore, Defendants knew of and disregarded a substantial risk of serious harm to his health and safety and were so grossly incompetent and inadequate as to shock the conscience.

36. As a direct and proximate result of Defendants acts and/or omissions, Mr. Sawney was deprived of his federal constitutional right to receive adequate medical care in violation of the United States Constitution and as a further direct and proximate result of Defendants' acts and/or omissions suffered excruciating pain and suffering and wrongful death which resulted in damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

37. The Defendants, and each of them, have in regard to this matter, exhibited a willful and deliberate disregard for the rights and safety of Mr. Sawney. Accordingly, Plaintiffs is entitled to punitive damages against all the individual and supervisory Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### COUNT IV - NEGLIGENCE

38. Plaintiffs hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 37 of this Complaint.

39. Upon information and belief, the Sequoyah County Board of Commissioners and/or the Sequoyah County Sheriff's Department contracts with Turn Key to provide care to detainees at the SCJ. Turn Key and its employees are not protected under the qualified immunity and are subject to the state law claims of the State of Oklahoma.

40. The above described acts and/or omissions by Turn Key and its employee Julie Ninal or Jane Doe constitute at bare minimum negligence which caused and/or contributed to Mr. Sawney's death and damages.

41. As a direct and proximate cause of the Turn Key employees' acts and/or omissions, as described within this section, Mr. Sawney suffered excruciating pain and ultimately lost his life which resulted in damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

42. These Defendants, and their acts described herein, have exhibited a willful and deliberate disregard of the rights and safety of Mr. Sawney. Accordingly, Plaintiffs is entitled to punitive damages against these individuals in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### COUNT V – WRONGFUL DEATH

43. Plaintiffs hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 42 of this Complaint.

44. Upon information and belief, all Defendants had a duty to ensure the safety and attend promptly to Mr. Sawney's medical needs. Their failure to fulfill their duty to Mr. Sawney is a direct cause of his death, which could have and should have been prevented.

45. The above described acts and/or omissions by Defendants caused and/or contributed to Mr. Sawney's death and damages.

46. As a direct and proximate cause of the Defendants actions or inactions, as described within this section, Mr. Sawney suffered excruciating pain and ultimately lost his life which resulted in damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

47. These Defendants, and their acts described herein, have caused Mr. Sawney's death, resulting in damages that include medical and burial expenses, loss of consortium and grief to his wife, Francisca Martinez, mental pain and anguish to Mr. Sawney, pecuniary loss to Mr. Sawney's wife and children, and grief and loss of companionship to his children and parents. Accordingly, Plaintiffs is entitled to punitive damages against these individuals in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT VI - RACIAL DISCRIMINATION AND PROFILING

48. Plaintiffs hereby realleges and incorporates by reference the allegations complained in paragraphs 1 through 47 of this Complaint.

49. Upon information and belief, SCSO has a history of racial profiling when it comes to Native Americans in their jurisdiction and the County has a history of systematic racism.

50. The above described acts and/or omissions by the SCSO and Jason Stone constitute racial discrimination and violates the Fourteenth Amendment of the United States Constitution, which caused and/or contributed to Mr. Sawney's death and damages.

51. As a direct and proximate cause of the SCSO and Jason Stone's acts and/or omissions, as described within this section, Mr. Sawney suffered excruciating pain and ultimately lost his life which resulted in damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

52. These Defendants, and their acts described herein, have exhibited a willful and deliberate disregard of the rights and safety of Mr. Sawney. Accordingly, Plaintiffs is entitled to punitive damages against these individuals in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

53. Plaintiffs has additionally requested records from these Defendants under the Oklahoma Open Records Act and the Freedom of Information Act. These requests were made in September 2020 and have not yet been completely fulfilled and/or objected to. Plaintiffs is additionally requesting this Court to order these records to be produced in accordance with those statutes.

WHEREFORE, Plaintiffs prays for judgment against the Defendants, and each of them, jointly and severally as follows:

A. Finding that Defendants, and each of them, committed acts and omissions that constitute violations of the United States Constitution actionable under 42 U.S.C. § 1983;

B. Awarding judgment in favor of Plaintiffs against Defendants, and each of them jointly and severally in an amount of excess of Seventy-five Thousand Dollars ($75,000.00) as and for compensatory damages;

C. Awarding judgment in favor of Plaintiffs against Defendants, and each of them, jointly and severally in an amount of excess of Seventy-five Thousand Dollars ($75,000.00) as and for punitive damages;

D. Awarding judgment in favor of Plaintiffs against the Defendants who are independent contractors for their negligent acts jointly and severally in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as and for compensatory damages;

E. Awarding judgment in favor of Plaintiffs against the Defendants for damages that include medical and burial expenses, loss of consortium and grief to his wife, Francisca Martinez, mental pain and anguish to Mr. Sawney, pecuniary loss to Mr. Sawney's wife and children, and grief and loss of companionship to his children and parents, jointly and severally in an amount of excess of Seventy-five Thousand Dollars ($75,000.00);

F. Awarding Plaintiffs all applicable pre-judgment and post-judgment interest;

G. Awarding Plaintiffs attorney fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

Respectfully submitted,

*/s/ Josh Hutchins*

Josh Hutchins, OBA #34054
JOSH HUTCHINS LAW
215 W. Shawnee
Tahlequah, OK 74464
918-453-2800
**ATTORNEY FOR PLAINTIFFS,
FRANCISCA MARTINEZ, ET AL.**

**JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED**